[No. 5164.    Decided December 30, 1904.]

## SEATTLE BREWING & MALTING COMPANY, *Respondent,* v. WILLIAM JENSEN *et al., Appellants.*[1]

RECEIVERS — INJUNCTION — AGREEMENT TO SELL EXCLUSIVELY CERTAIN BEER — EVIDENCE OF SURRENDER OF AGREEMENT — SUFFICIENCY—FINDINGS NOT SUPPORTED BY PREPONDERANCE OF EVIDENCE— AFFIDAVITS. Where plaintiff, a brewing company, signed a lease of premises to be used for a restaurant and saloon, as surety for payment of the rent, in consideration of which the defendants, who were the actual tenants, agreed to use and sell exclusively the plaintiff's beer in the conduct of said business, in an action for a receiver brought by the plaintiff alleging it to be a half owner of the leased premises, and seeking an injunction against the sale by defendants of any beer other than plaintiff's beer, findings in favor of the plaintiff are not sustained, and there is no necessity for a receiver or an injunction, where it appears that the plaintiff had no interest in the lease, but signed as surety only, that money loaned by plaintiff to the defendants to fit up the place had been repaid, that the plaintiff was actuated by a vindictive spirit in bringing the suit, that defendants offered access to their books to show the amount of their sales of beer and offered security against damage thereby, and where it appears by a preponderance of the evidence (which was wholly by affidavits) that the plaintiff had surrendered its so-called beer contract in consideration of being released from liability as surety for the rent.

[1]Reported in 78 Pac. 1007.

Appeal from an order of the superior court for King county, Bell, J., entered June 12, 1904, after a hearing upon affidavits, appointing a receiver *pendente lite* and granting a temporary injunction, in an action to enjoin the sale by defendants of any other than plaintiff's beer.   Reversed.

*Ballinger, Ronald & Battle,* for appellants.

*G. M. Emory* and *Harold Preston,* for respondent.

Dunbar, J.—This was an action asking for equitable relief, viz., for a temporary injunction and for the appointment of a receiver *pendente lite.*   The complaint alleges a contract, and sets forth as the basis of said contract the following written document, viz:

"This indenture, made this 20th day of March, 1901, by and between J. W. Clise and William Nottingham . . . parties of the first part, and William Jensen and Hulda Jensen, his wife, and the Seattle Brewing and Malting Company, jointly and severally, parties of the second part, Witnesseth: That the said parties of the first part do by these presents lease unto the said parties of the second part for restaurant and saloon purposes all the premises known as the Bismarck Cafe, for a period from the date hereof to the 31st day of December, 1906, at the monthly rental of five hundred dollars, payable on the first day of each month, in advance, together with all bills for heat, light, water and all repairs and other expenses incurred incident to the use and occupancy of said premises. . . '.   The said parties of the second part do hereby jointly and severally covenant and agree to pay the said parties of the first part the said rent for the full term of this lease, in the manner hereinbefore specified," etc.

It is alleged in the complaint, that, at the same time, and as a part of the same contract and transaction, the parties to this action entered into the following memorandum of agreement, viz:

"Memorandum of Agreement, made and entered into this 20th day of March, A. D. 1901, by and between the Seattle Brewing and Malting Company, a corporation etc., the party of the first part, and William Jensen and Hulda Jensen, his wife, parties of the second part, Witnesseth: Whereas the aforesaid first and second parties have jointly leased and rented from J. W. Clise and William Nottingham, through J. W. Clise, for himself and as the duly authorized agent of William Nottingham, by written lease bearing even date herewith, all that [being the same property described in the lease], for the term commencing with the completion of the premises and ending on the 31st day of December, 1906; and said second parties will conduct and carry on a restaurant, saloon and liquor business in said premises during the term of said lease; And whereas, one of the conditions upon which the lease of the said premises is jointly made with the parties of the first part and parties of the second part, was that the second parties should enter into and agree with the party of the first part, to purchase from the said first party exclusively all the beer sold or offered for sale in said premises during the term of the above lease; Now, therefore, in consideration of the premises, it is hereby mutually agreed by and between the parties hereto, as follows: First, all of the beer sold or offered for sale by the second parties in the carrying on of said saloon and restaurant business in the premises aforesaid during the term of said lease, shall be purchased from the party of the first part. (Signed and witnessed.)

It is further alleged in the complaint that, at the time of the execution of these instruments, it was mutually orally agreed that the plaintiff was to be the owner, entitled to the possession, of an undivided one-half, and the defendants to an undivided one-half, of the leasehold estate. It is also alleged, that, as a part of the same transaction, it was orally agreed that plaintiff would loan defendants, without interest, $8,000, to be expended by defendants

for the benefit of said leasehold estate in improving, decorating, etc., and that, by reason of the loaning of said $8,000 the leasehold estate was rendered valuable to that extent; that it was mutually agreed, also, by said plaintiff and said defendants, at the time of entering into said agreement, as a part thereof, that the sole profits to be derived from said leasehold estate by said plaintiff should be the profits derived from the exclusive purchase from it, by defendants, of all the beer sold or offered for sale by them in said premises during the term of said lease; that the defendants conducted a prosperous business, in accordance with the agreement aforesaid, and complied with the beer contract until the month of December, 1903, to the benefit of the plaintiff in the sum of $15 a day; that in December, 1903, the defendants, in violation of their contract and contrary to equity and good conscience, refused to purchase any beer whatever from said plaintiff, and still refuse to purchase it, now or in the future, but on the contrary are purchasing, and threaten to continue to purchase, large quantities, to wit, all the beer consumed, or to be consumed, sold, offered for sale, or to be sold or offered for sale, upon said leasehold premises; that it is impracticable to determine the amount of damages from the violation of the contract in an action at law, by reason of the fact that the profits arising from the sale of beer conflict greatly, now and at various times, by factors impossible for either plaintiff or defendants to foresee or control, such as the possible increase or decrease of the population, the changing of currents of travel, the condition of the weather, and the change of centers of population within said city of Seattle; together with the other ordinary allegations in such cases in relation to damages; alleges, also, that the defendants refuse to allow plaintiff to enjoy any of the

benefits arising from said lease, and have refused, and still refuse, to allow it to partake of any of the rights of possession secured thereby; and have refused, and still refuse, to allow it in any manner to share or partake in the increased value of said leasehold arising by reason of the furnishing of said money hereinbefore referred to; prays that a receiver of said leasehold and said business and all furniture, fixtures, appliances, or personal property in or about the conduct thereof, be appointed, and that an order issue enjoining and restraining defendants from further refusing to purchase from plaintiff all beer sold, or offered for sale, by them upon said premises, or from purchasing from any person other than plaintiff, for sale on said premises, and from selling thereon, and offering for sale thereon, any beer so purchased; and for general relief.

A demurrer was interposed to this complaint, to the effect that it failed to state facts sufficient to constitute a cause of action against the defendants, or to entitle the plaintiff to the relief in equity as prayed for, or for any relief in equity. The demurrer was overruled, and upon a trial of the cause a receiver was appointed, and a temporary injunction granted, in accordance with the prayer of the complaint. This cause was tried by the court upon affidavits alone. The first affidavit made by Sweeney, who is the agent of the respondent, sets forth, in substance, the matters and things set forth in the complaint. The appellants filed an answering affidavit, by appellant William Jensen, in which it was admitted that the agreements were executed as set forth in the complaint, but it is alleged, that it was the intention of the parties plaintiff and defendant that the plaintiff should not be a joint lessee with the defendants, but simply a surety; that one Blackistone had an option with Clise for

the lease of these premises; that the defendants paid him
$250 for said option, and undertook to lease the prem-
ises from Clise and his principals; and that Clise de-
manded security, and that said security was furnished
in the manner specified; that plaintiff has never assumed
to have any interest in the leasehold estate; that it has
never paid any part of the rent, which has always been
paid by the defendants, and that it never claimed any other
interest than the advantage which it would obtain by rea-
son of the sales of its beer, which was to be used in the
business conducted by the defendants; that defendants
were unable to purchase beer, after the middle of Decem-
ber, of the brewing company, by reason of the fact that
the unions in Seattle had pronounced the plaintiff com-
pany's beer unfair, and undertook to prohibit its sale;
that defendants had employed, in their business in the
cafe aforesaid, some seventy employees, all of whom be-
longed to the union, and all of whom threatened to strike,
if defendants purchased said beer, and threatened to boy-
cott the business of defendants, and defendants became
satisfied that they could not conduct their business and
that their business, which was a valuable one, would
be absolutely destroyed if they yielded to the protesta-
tions of Sweeney and purchased his beer; that Sweeney,
in the first place, tried to hire affiant to enter into his
quarrel with the unions, by offering him a thousand dol-
lars, and that afterwards, when he discovered this could
not be done, he became enraged at the defendants, threat-
ening to prevent them from buying beer of any other
dealer; that he sued them without notice for the $8,000
which had been loaned to them, and by them expended
in furnishing and improving the leasehold interest, there-
by causing them to pay not only the $8,000 but $300
attorney's fee, although a short time before the money

had been proffered to Sweeney, and he had told the defendants to keep it as the company was not in any need of it; that, in order to prevent trouble and litigation, while they did not consider themselves, for reasons hereinafter stated, bound upon the so-called contract, they offered to give the plaintiff a bond for the payment to it of any sum which might be found due it as damages for their failure to buy beer of it according to the alleged contract; that they offered to allow it to have access to their books, so that it could tell the amount of beer that was sold by them during the time that they did not purchase the beer of the plaintiff, and made every offer which was possibly within their power to make; that, after making one of these propositions to the attorney for the plaintiff, who said that he would submit it to Mr. Sweeney and let them know the result of the submission by ten o'clock the next morning, at about nine o'clock that evening affiant was rung up on the telephone by Sweeney, who said to him, in the following words: "I want you to understand about that settlement you are trying to make. I don't want no settlement. I am going to have a receiver in there if hell freezes over. I am going to draw every drop of blood out of you. I am going to take the last dollar from you." To which affiant answered, "Go at it, old boy," and hung up the telephone.

Sweeney, in a counter affidavit, denies using the language alleged in defendants' affidavit to have been used, but states in his own words what he said, which shows substantially the same revengeful spirit and inclination to injure the defendants, rather than to settle their difficulties. We speak of this only to show the apparent animus in the bringing of the action, which may, and ought, to a certain extent, guide the court in weighing the testi-

mony in a cause like this where there is a plain conflict in the testimony.

It is also alleged, in defendants' affidavit, that Clise, desiring to obtain some concessions from these lessees, wanting a portion of the premises released to him for the purpose of building the foundation for a vault, entered into an agreement with the defendants and with Sweeney by which the plaintiff was to be released, it being stated in the affidavit of defendants that the plaintiff had objected to being further responsible on this lease; that Sweeney agreed to this proposition of Mr. Clise, and agreed to withdraw from the lease and allow the defendants to become the sole lessees, and also agreed that, in consideration of the release of the plaintiff, it would release the defendants from their beer contract. This is bitterly denied by Sweeney in an answering affidavit.

We are satisfied from the whole record that it never was the intention that the plaintiff should have any interest in the leasehold estate; that its true position, which was understood not only between plaintiff and defendants but between them and Clise, was that it was simply security for the carrying out of the lease; that it paid no attention to the lease, transacted none of the business, and was interested only in securing sales for its beer. In fact, it is stated in the affidavit of Sweeney that the plaintiff never claimed any other profit in the business than the profit which would arise from the sale of beer under the alleged beer contract. There is no testimony in the case that the leasehold interest has in any way been injured, or will be injured, or that any property in connection with it has been or will be dissipated.

The allegations in relation to the furnishing of the $8,000 are met by the uncontradicted affidavit that said money had since been paid, and there cannot, in any

event, be any reason for the appointment of a receiver to look after the leasehold interest. It is conceded that, under the agreement, the defendants have a right to use such leasehold interest exclusively, and there is nothing to show that it is being used contrary to any of the conditions agreed upon, excepting in the matter of the purchase of the beer. This contract in relation to the beer was an exceedingly loose one, there being no price stipulated for the payment of the beer, not even that the market price should be paid therefor. But, conceding, without deciding, that the market price was the price which was understood at the time of the execution of the contract, according to the affidavit of the defendants this contract was abrogated and annulled, and the defendants released by agreement with Sweeney. The following affidavit of Mr. Clise seems to put this question beyond a peradventure, and throws some light upon the whole transaction. It is as follows:

"J. W. Clise, being first duly sworn, upon oath deposes and says: That prior to the execution of the lease mentioned in the plaintiff's complaint herein, he required of the defendants security; that the result of said requirement was the making of the lease to the plaintiff and defendants jointly; that thereafter, the owners of the premises desired the surrender of a small portion of said premises for the purpose of constructing the foundation for a vault for a bank which was to occupy a room on the floor above; that the defendant William Jensen refused under any circumstances or upon any conditions for a while, to surrender possession of the part desired by the owners of the premises; that E. F. Sweeney, manager of the plaintiff, never claimed to affiant that he owned or controlled any part of the leasehold interest or of the business carried on by the defendants, and he has at times stated to affiant that he did not control said matters; plaintiff has never paid any of the rent; that all

rentals for said premises have been paid by the defendants; that the said Sweeney was willing for the owners to have possession of that portion of the leased premises required for the purpose of constructing said vault as aforesaid, but informed affiant that he could not dictate to or control defendants Jensen; that thereupon defendant William Jensen stated to affiant that if affiant would release plaintiff from any liability as surety on account of said lease, and procure the release of the defendants from any obligation to plaintiff ·he, said Jensen, would surrender to the owners the portion of the premises desired for the construction of said vault.  Thereupon affiant sought and met Mr. Sweeney in the office of L. C. Gilman, an attorney-at-law, and after stating the fact as aforesaid to said Sweeney affiant asked said Sweeney if he, Sweeney, would release defendant from his so-called beer contract providing the defendant would surrender to the owners the premises desired as aforesaid; that Mr. Sweeney answered in the affirmative, and agreed to do so; that affiant relying upon the promises of the said Sweeney communicated the same to the said defendants Jensen, and then and there entered into a written argeement with Jensen, a copy of which is hereto attached; that the new lease has never been made, but that the said Jensen is in possession not only of the premises covered by the old lease, but also the additional room mentioned in said contract, and has been paying therefor the sum of $285.00 per month."

The agreement, which was entered into after the understanding with Clise and Sweeney, is an agreement providing for the dismissal of a certain suit which Clise had brought for the purpose of recovering a certain portion of the leased premises, Jensen agreeing that he would permit said Clise to construct a vault, and Clise agreeing to pay Jensen $40 a month compensation therefor, for the life of the lease, and Clise agreeing to co-operate with Jensen to the best of his ability to obtain from the city council permission to construct a stairway from Madi-

son street to the premises occupied by Jensen. This affidavit of Mr. Clise is denied absolutely in an answering affidavit of Sweeney, and an affidavit was furnished by attorney Gilman in some sense disputing the affidavit of Clise, though we do not regard it as the intention of Mr. Gilman to state any more than his knowledge on the subject, which was to the effect that he had heard some of the conversations between Sweeney and Clise in his office, although he does not say that he heard all of them, or that he heard the particular one which was referred to by Mr. Clise. But concerning the talks generally over the business, he says this: "Affiant does not remember that the said Sweeney stated in said conversation that he would release the interest of plaintiff in said lease, and affiant is certain that said Sweeney did not state that he would be willing to release the beer contract of the plaintiff;" and then proceeds to say that he had advised his client Sweeney that, if he released the lease contract, it would probably work the release of the beer contract.

This case was tried on affidavits alone, where there was no opportunity for cross-examination or explanation. The affidavits of the defendant Jensen and Sweeney cannot be reconciled. Mr. Clise, who so far as we can gather from this record is a disinterested witness, states positively that the understanding was reached with Sweeney as agent for the plaintiff, and communicated by him to Jensen; that the lease was given up by plaintiff, and that the defendants were released from their beer contract. This positive statement is in reality not disputed by the affidavit of Gilman, because his statement is only to the effect that he does not recollect certain statements, but it is not shown that he was in a position where he would take notice or recollect the statements alleged to have been made. From the affidavits, as they appear in the

record, we think the weight of the testimony is with the defendants, and that the plaintiff has failed to establish any right to equitable relief.

The judgment will be reversed and the cause dismissed.

FULLERTON, C. J., and ANDERS, MOUNT, and HADLEY, JJ., concur.